```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```

PALMA A. BIELECKI,

                            Plaintiff,      **No. 1:15-cv-00193(MAT)**
                                                 **DECISION AND ORDER**
        -vs-

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                            Defendant.

## INTRODUCTION

Represented by counsel, Palma A. Bielecki ("Plaintiff") instituted this action pursuant to Title II of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner")[1] denying her application for Disability Insurance Benefits ("DIB"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c).

## PROCEDURAL STATUS

Plaintiff protectively filed an application for DIB on March 28, 2012. After the claim was denied initially on August 13, 2012, Plaintiff filed a written request for a hearing. On August 26, 2013, a videoconference hearing was conducted by administrative law

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

judge Robert C. Dorf ("the ALJ"). Plaintiff appeared with her attorney and testified, as did impartial vocational expert Melissa Fass Karlin ("the VE"). The ALJ issued an unfavorable decision on September 24, 2013. (T.14-31).[2] The Appeals Council denied Plaintiff's request for review on January 6, 2015, making the ALJ's decision the final decision of the Commissioner. Plaintiff then timely commenced this action.

The parties have filed cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The Court adopts and incorporates by reference herein the undisputed and comprehensive factual summaries contained in the parties' briefs. The Court will discuss the record evidence further below, as necessary to the resolution of the parties' contentions.

For the reasons discussed below, the Commissioner's decision is affirmed.

## THE ALJ'S DECISION

The ALJ followed the five-step sequential evaluation established by the Commissioner for adjudicating disability claims. See 20 C.F.R. §§ 404.1520, 416.920.

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Act through June 30, 2016, and has not

---

[2] Citations to "T." in parentheses refer to pages from the transcript of the certified administrative record.

engaged in substantial gainful activity since January 1, 2011, the alleged onset date.

At step two, the ALJ determined that Plaintiff has the following "severe" impairments: status post resectional arthroplasty of the left trapezium; degenerative joint disease of the knee; and degenerative disc disease. The ALJ considered a number of other alleged impairments but found them to be non-severe. First, the ALJ found, Plaintiff's bilateral sensorineural hearing loss is ameliorated by an ear-level hearing aid on the left side. A cat bite, sustained in February 2011, is not a medically determinable impairment because it did not last for a continuous period of not less than twelve months. The ALJ also noted a remote right shoulder surgery, which resolved Plaintiff's shoulder problems until June 2013, at which time Plaintiff reported right shoulder pain for one month. Therefore, the ALJ found that any right shoulder condition did not satisfy the Act's durational requirement. The ALJ noted that Plaintiff's gastroesophageal reflux disease was well-managed medically, and she had a normal esophagogastroduodenoscopy. As to her medically determinable mental impairments of attention deficit disorder, major depression, and generalized anxiety disorder, the ALJ considered them singly and in combination, but found that they do not cause more than minimal limitation in her ability to perform basic mental work activities and are therefore non-severe. The ALJ also performed the special

technique as required for psychiatric impairments and determined that Plaintiff has no limitations in activities of daily living or social functioning; mild limitation in maintaining concentration, persistence, or pace; and has experienced no episodes of decompensation.

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ gave particular consideration to Listing 1.02 (Major dysfunction of a joint) and Listing 1.04 (Disorders of the spine). The ALJ found that Plaintiff does not meet the criteria of Listing 1.02 because she is able to ambulate effectively as well as to perform fine and gross movements effectively. As to Listing 1.04, the ALJ found that in light of the physical examinations documenting Plaintiff's normal gait and station, normal sensation and reflexes, and negative straight-leg-raising bilaterally, her degenerative disc disease does not meet this listing's requirements.

Prior to proceeding to step four, the ALJ assessed Plaintiff as having the residual functional capacity ("RFC") to perform the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a).

At step four, the ALJ reviewed the VE's hearing testimony to the effect that Plaintiff had past relevant work ("PRW") as a medical records transcriber (Dictionary of Occupational Titles

("DOT") #203.582-058, SVP 5, skilled, sedentary). (T.53). The ALJ found that Plaintiff performed this job[3] as it is described in the DOT and the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles,[4] and as it is generally performed in the national economy. Comparing Plaintiff's RFC with the physical and mental demands of the job of medical records transcriber, the ALJ found that she is able to perform the job as she actually performed it in the past, and as it is generally performed. Because Plaintiff is able to perform a full range of sedentary work, the ALJ stated, demands of her PRW do not exceed her assessed RFC. Accordingly, the ALJ found that Plaintiff was not under a "disability" within the meaning of the Act during the relevant period.

The ALJ did not make an alternative step-five finding.

**SCOPE OF REVIEW**

When considering a claimant's challenge to the decision of the Commissioner denying benefits under the Act, the district court is limited to determining whether the Commissioner's findings were supported by substantial record evidence and whether the

---

[3] The ALJ noted that Plaintiff stopped working for reasons unrelated to her allegedly disabling impairments. Specifically, Plaintiff reported that her employment as a medical records transcriber ended approximately two years prior to the hearing when the company switched over to electronic records.

[4] See U.S. Dept. of Labor, Employment and Training Admin., Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, Part A, p. 345 (1993), available at www.nosscr.org/sco/sco.pdf (last accessed Sept. 14, 2017).

Commissioner employed the proper legal standards. Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. See 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)).

**DISCUSSION**

**I. Errors in the RFC Assessment**

**A. Failure to Consider Plaintiff's Non-Severe Impairments of Depression and Anxiety**

Plaintiff argues that the ALJ erroneously disregarded her generalized anxiety disorder and depressive disorder when posing hypotheticals to the VE at the hearing and formulating her RFC assessment. (See Pl's Mem. (Dkt #8-1) at 18-20, 23-24). Specifically, Plaintiff asserts that the ALJ's questions covered only two extremes: the hypothetical individual who was limited to simple, unskilled work; or the hypothetical individual who had no mental limitations at all. Plaintiff notes that her past work was

skilled, and "the VE might have opined that even limitations which are considered mild for routine daily functioning could prevent her from performing and sustaining this work." (Pl's Mem. at 19). Plaintiff does not identify or specify which limitations caused by her alleged mental impairments should have been included in the ALJ's hypotheticals to the VE. At step two, in performing the special technique applicable to mental impairments, the ALJ found that Plaintiff has "no limitations" in social functioning and "no limitations" in activities of daily living, findings with which Plaintiff does not take issue on this appeal. The ALJ found that Plaintiff has only "mild limitations" in maintaining concentration, persistence or pace; again, Plaintiff does not take issue with this finding. Assuming Plaintiff is referring to the "mild limitations" assigned by the ALJ to her abilities to maintain concentration, persistence or pace, there is substantial evidence in the record to support the ALJ's failure to include such limitations in his hypotheticals to the VE.

For instance, in July of 2012, consultative psychologist Dr. Kevin Duffy examined Plaintiff and opined that, inter alia, she could maintain a regular schedule, follow and understand simple directions and instructions, perform simple tasks independently, learn new tasks, perform complex tasks independently, make appropriate decisions, and relate adequately with others. (T.293). Following a subsequent consultative examination on June 25, 2013

(T.336-45), psychologist Dr. Janine Ippolito issued a slightly more restrictive opinion regarding Plaintiff's abilities, stating Plaintiff had "mild limitations" in her ability to understand, remember, and carry out complex instructions and make complex decisions. The ALJ found the limitations imposed by Dr. Ippolito to be unsupported by the treatment records. Moreover, the clinical findings on which Dr. Ippolito based those opinions do not reflect that Plaintiff's mental impairments were necessarily the cause of the mild impairments. In particular, Dr. Ippolito observed that Plaintiff's attention and concentration was "[m]ildly impaired due to problems with math skills." (T.338). However, the only task with which Plaintiff had an issue was serial 3s subtraction, and she only made *one* error. (Id.). Then, Dr. Ippolito stated that Plaintiff's recent and remote memory skills were "[m]ildly impaired due to memory problems[,]" not due to any symptomatology arising from her alleged depression and anxiety. (T.338). Again, Plaintiff only had an issue with one task, recalling objects after a 5-minute delay; she was able to recall 1 out of 3 objects correctly. (Id.). Dr. Ippolito went on to note that, with regard to Plaintiff's cognition, her intellectual functioning was average and her general fund of information was appropriate to her experience. Reviewing all of the clinical findings underlying Dr. Ippolito's assignment of "mild" limitations, the Court finds that her report is not

contrary to the ALJ's finding that Plaintiff can perform her PRW as a medical records transcriber.

Moreover, any error is harmless because the VE testified at the hearing that a hypothetical person of Plaintiff's age, and with her RFC, education, and vocational experience, even if limited to simple, repetitive tasks, in a low stress environment (defined as no decision-making required and occasional contact with the public, co-employees, and supervisors) could perform various jobs that exist in significant numbers the national economy. (T.53-54). In particular, the VE identified the jobs of surveillance system monitor (DOT #379.367-014, sedentary, unskilled (SVP 2), 16,715 such jobs in the national economy); bench hand (DOT #715.684-026, sedentary, unskilled (SVP 2), 20,518 such jobs in the national economy); addresser (DOT #209.587-010, sedentary, unskilled (SVP 2), 19,004 such jobs in the national economy). (T.54-55). Thus, although the ALJ ended the sequential evaluation at step four and did not make an alternative step five finding in his decision, there is substantial evidence in the record to carry the Commissioner's limited burden at step five. See 20 C.F.R. § 404.1560(c)(2) ("In order to support a finding that you are not disabled at this fifth step. . . , we are responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that you can do, given your residual functional capacity and vocational factors. We are not

responsible for providing additional evidence about your residual functional capacity because we will use the same residual functional capacity assessment that we used to determine if you can do your past relevant work.").

   **B.   Failure to Consider Plaintiff's Non-Severe Impairment of Status Post-Right Shoulder Surgery**

Plaintiff argues that the ALJ erroneously discounted the opinion of consultative physician Nikita Dave, M.D. (see T.346-59) with regard to her right shoulder pain. During the examination on June 25, 2013, Plaintiff told Dr. Dave that she had been having right shoulder pain for about one month, after it had been resolved with surgery "years ago." (See T.346-47; see also T.63, 64 (testimony by Plaintiff that she had "no idea" about date of shoulder surgery; it could have been "more than 10 years ago")). Plaintiff informed Dr. Dave that the pain "shoots up along the trapezius into the right lateral neck producing right neck pain" that was "intermittent and sharp" and "brought on by carrying, lifting, reaching up, and moving her neck suddenly." (T.347). Resting, holding the arm in a sling position, and medication helped the pain. (Id.). Dr. Dave noted that Plaintiff was "pending discussion with [her] primary [physician], workup, and evaluation" of her shoulder issue.

As part of her medical source statement, Dr. Dave stated that Plaintiff's "[r]ight shoulder has moderate limitations for lifting, carrying, pushing, and pulling of greater than light to moderately

-10-

weighted objects and overhead reaching at this time[,] pending workup and treatment." (T.350). The ALJ gave "less weight" to Dr. Dave's opinion as a whole because he found it "inconsistent with the reported activities of the claimant set forth above[,]" including gardening and driving. According to Plaintiff, the ALJ erred by allegedly not factoring Dr. Dave's opinion regarding her shoulder limitations into the RFC assessment. As discussed further below, the Court finds that the ALJ did not commit legal error, and that the RFC was not inconsistent with Dr. Dave's opinion.

The Commissioner has elaborated on the definition of "sedentary work" set forth at 20 C.F.R. §§ 404.1567(a), 416.967(a), in Social Security Ruling ("SSR") 96-9p:

> The ability to perform the full range of sedentary work requires the ability to lift *no more than 10 pounds* at a time and *occasionally* to lift or carry articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. *"Occasionally" means occurring from very little up to one-third* of the time, and would generally total no more than about 2 hours of an 8-hour workday. Sitting would generally total about 6 hours of an 8-hour workday. Unskilled sedentary work also involves other activities, classified as "nonexertional," such as capacities for seeing, manipulation, and understanding, remembering, and carrying out simple instructions.

SSR 96-9p, Titles II and XVI: Determining Capability To Do Other Work—Implications of a Residual Functional Capacity for Less Than

a Full Range of Sedentary Work, 61 Fed. Reg. 34478, 34480 (S.S.A. July 2, 1996) (emphases added).

At the hearing, when questioning Plaintiff, her attorney characterized Dr. Dave's opinion as stating that Plaintiff "wouldn't be able to do *any* overhead lifting or *any* reaching in front of [her] in a sedentary level [sic]." (T.65 (emphases supplied)). The Court finds that this is not an accurate characterization of Dr. Dave's opinion, which simply opined that Plaintiff's has "moderate limitations for lifting . . . greater than light to moderately weighted objects and overhead reaching" with regard to her right shoulder. Plaintiff admitted that she could "reach out in front of [her]self," and she testified to being able to drive and to garden. (T.66). Plaintiff said that if she "were to go to reach something and have to lift it, then [she] would really have a problem." (Id.). Thus, Plaintiff's own statements about her abilities are not inconsistent with either the Regulations' definition of sedentary work or SSR 96-9p, neither of which contain references to "reaching," which is defined by the U.S. Department of Labor as "[e]xtending hand(s) and arm(s) in any direction." SCO, App. C (Physical Demands), p. C-3.

**II. Denial of a Full and Fair Administrative Hearing**

Plaintiff argues that she did not receive a full and fair administrative hearing because the ALJ ended the hearing before her attorney could pose additional questions to the VE. (See Pl's Mem.

-12-

at 24-25). As an initial matter, the Court notes that "[p]resentation and reception of evidence [are] left to the ALJ's broad discretion[.]" Brogan v. Comm'r of Soc. Sec., 671 F. App'x 12, 14 (2d Cir. 2016) (unpublished opn.) (ALJ did not err at the hearing err by denying a display of claimant's abdomen or faulting the form of his counsel's questions to the vocational expert) (citing 20 C.F.R. § 404.950(c)); see also 20 C.F.R. § 416.1550(c)). Significantly, Plaintiff has not demonstrated that she sustained any prejudice by the ALJ's limitation on her attorney's examination of the VE. As Defendant argues, Plaintiff has not explained what type of testimony she hoped to elicit form the VE or, assuming that she did elicit such evidence, how it would have been favorable to her disability claim. Thus, any procedural error by the ALJ in the conduct of the hearing was harmless.

## CONCLUSION

For the foregoing reasons, the Court finds that the Commissioner's decision is not legally erroneous and is supported by substantial evidence. Accordingly, the Commissioner's decision is affirmed. Defendant's motion for judgment on the pleadings is granted, and Plaintiff's motion for judgment on the pleadings is denied. The Clerk of Court is directed to close this case.

**SO ORDERED.**

S/Michael A. Telesca

HON. MICHAEL A. TELESCA
United States District Judge

Dated:   September 14, 2017
         Rochester, New York.